In re **FORD  MOTOR  COMPANY  IGNITION  SWITCH  PRODUCTS  LIABILITY  LITIGATION (This applies to Veideman, Civil Nos. 96–948 and 96–3125 and Pierce, Civil No. 96–4912).**

**MDL No. 1112.
Civ.A.No.  96–3125 JBS.**

United States District Court,
D. New Jersey.

Aug. 27, 1998.

See also, 174 F.R.D. 332.

Richard S. Schiffrin, Schiffrin & Craig, LTD., Bala Cynwyd, PA, Timothy G. Blood, Milberg, Weiss, Bershad, Hynes and Lerach, LLP, San Diego, CA, for MDL Plaintiffs.

Beverly C. Moore, Moore & Brown, Washington, D.C., for Snodgrass Plaintiffs.

Brian C. Anderson, O'Melveny & Meyers, Washington, D.C., for Ford Motor Company.

Scott L. Winkelman, Crowell & Moring, Washington, D.C., for United Technologies Automotive, Inc.

Matthew T. Heartney, Arnold & Porter, Los Angeles, CA, for State Farm Mutual Automobile Insurance Company.

Larry W. Morris, Morris, Haynes, Ingram & Hornsby, Alexander City, AL, for Plaintiffs, Wayne Pierce and Charles Glen Ross.

## OPINION

SIMANDLE, District Judge.

The Ford ignition switch litigation involves two groups of putative class action suits and one group of insurance subrogation cases, all of which allege that defendant United Technologies Automotive, Inc. ("UTA") manufactured defective motor vehicle ignition switches that have a propensity to spontaneously catch fire, and that defendant Ford Motor Company ("Ford") manufactured and distributed automobiles, light trucks, and utility vehicles of various models from 1985 to 1992 containing those defective ignition switches.

Presently before the court in this litigation are the following motions: (1) the motion by the consolidated MDL consumer plaintiffs (the *Veideman* Plaintiffs") for a judgment of lack of jurisdiction, and for vacatur of this court's rulings granting in part various motions to dismiss and denying class certifica-

tion [1]; and (2) the motion by the *Pierce* group of MDL plaintiffs to remand the *Pierce* complaint to state court. For the reasons stated below, the consolidated MDL (*"Veideman"*) plaintiffs' motion for judgment of lack of subject matter jurisdiction shall be denied without prejudice, while their motion to vacate this court's prior rulings shall be denied with prejudice, and the *Pierce* MDL plaintiffs' motion to remand shall be granted.

## BACKGROUND

### A. *General Background*

For purposes of clarity, the court will provide a brief summary of the three types of cases currently pending in the Ford Ignition Switch Products Liability Litigation, MDL No. 1112.

The first group of plaintiffs in this litigation, called the *"Snodgrass* Plaintiffs" (formerly called the *"Wilks* plaintiffs"),[2] seek to represent a nationwide class of people whose vehicles have caught fire as a result of the defective ignition. The *Snodgrass* cases did not come to this court via MDL transfer, but rather were originally filed in this court.

1. The movants actually entitled their motion a "motion to remand [the MDL] actions to state court and to vacate ruling[s] on motions to dismiss and for class certification". However, some of the MDL consumer cases were originally filed in federal court rather than state court, and therefore cannot be "remanded" to state court. Specifically, the *McDonnell, Davis, Saxe,* and *Cade* cases were all filed in federal court, while all the other MDL cases were filed in state court and removed by defendants to federal court. Accordingly, were this court to find in favor of the plaintiffs on these motions, the likely result would be an adjudication of lack of federal subject matter jurisdiction over the cases, accompanied by a recommendation (pursuant to Rule 14(c)(ii) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation) to the MDL Panel that the cases be returned to the federal district courts from which they came in order to be either dismissed or remanded, depending on whether the case originated in state court. Accordingly, the instant motion shall hereinafter be referred to as "MDL consumer plaintiffs' motion for a judgment of lack of jurisdiction, and for vacatur of this court's rulings on the motions to dismiss and for class certification".

2. The *"Snodgrass"* case is a consolidation of two separate actions originally filed in this court; *Teri Snodgrass et al. v. Ford Motor Co. et al.,*

The motions addressed in this Opinion do not relate to the *Snodgrass* cases.

The second type of plaintiff, the "MDL Insurance plaintiffs" are insurance companies who seek to recover the costs of compensating insureds who owned Fords that allegedly suffered ignition switch fires. To date two such cases, one by State Farm Insurance Company and the other by California State Automobile Inter–Insurance, have been transferred to this court by the Judicial Panel on Multidistrict Litigation ("MDL Panel"), pursuant to 28 U.S.C. § 1407.

The third group of plaintiffs, the MDL consumer plaintiffs, are, in general, plaintiffs who seek to represent the owners of Fords in which there has not been a fire, such that the only alleged damages are the need to replace an allegedly defective $75 ignition switch.[3] This court started out with one such case, the *Veideman* case, which had been filed in New Jersey Superior Court and was removed to this court by the defendants. The MDL Panel subsequently transferred to this court all Ford/UTA consumer ignition switch cases which had been filed in or removed to federal courts across the country, and this court now has a total of thirteen such cases before it.[4]

(formerly known as *Michael Wilks et al. v.. Ford Motor Co. et al.,*) 96–1814(JBS) and *Arts Transportation et al. v. Ford Motor Co. et al.,* 96–3198(JBS) (formerly known as *Susan Andrews et al. v. Ford Motor Co. et al.*).

3. This description of the MDL consumer plaintiffs is, to a certain extent, an over-generalization, since there are MDL consumer plaintiffs who allege that their Fords have caught fire due to the allegedly defective ignition switch, including, for example, Wayne Pierce, named plaintiff in the *Pierce* action, 96–cv–4912.

4. In addition to the case of *Yvette Veideman,* 96–CV–948, which was filed in New Jersey Superior Court and removed to this court by the defendants, the other MDL cases, which were transferred here by the MDL panel, are the following: *James C. Moon, et al.,* 96–CV–3742 (JBS) from Southern District of Alabama, Civil Action No. 1:96–192; *Victoria Saxe,* 96–CV–3224 (JBS) from Northern District of California, Civil Action No. 3:96–536; *James E. Atkins,* 96–CV–3474 from Southern District of California, Civil Action No. 3:96–455; *Kent Kennedy,* 96–CV–3902 (JBS) from Northern District of Illinois, Civil Action Number 1:96–1172; *Gerald McConnell,* 96–CV–3175 (JBS) from Southern District of New York,

Upon transfer to this court, several of the MDL consumer plaintiffs (specifically, plaintiffs *Veideman,* Atkins, Saxe, and Davis) joined together to file a consolidated class action complaint, which was filed on July 19, 1996.[5] That case shall be called the *"Veideman"* case.[6] Other MDL consumer plaintiffs, including the plaintiffs in the *Pierce* case, 96–cv–4912, chose not to join the consolidated case.

In their initial consolidated complaint, the *Veideman* plaintiffs alleged the following causes of action: (1) violation of state consumer fraud statutes; (2) strict products liability; (3) breach of contract and express warranty; (4) fraudulent concealment; and (5) breach of implied warranty of merchantability. Subsequently, these plaintiffs filed a first amended consolidated complaint, which asserted that this court has federal question jurisdiction arising under 28 U.S.C. § 1331 by virtue of plaintiffs' claims under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

Several dispositive motions have been decided in that case by this court. This court denied without prejudice the motions for class certification that had been filed in the *Veideman* case and in the *Wilks* (now *"Snodgrass"*) case. *In re Ford Motor Co. Ignition Switch Products Liability Litigation,* 174 F.R.D. 332 (D.N.J.1997). Defendants also filed a motion to dismiss the amended complaint in the *Veideman* case, which was granted in part and denied in part on September 30, 1997. *In re Ford Motor Co. Ignition Switch Products Liability Litigation,* MDL No. 1112, Master Civil Action No. 96–3125(JBS) (Opinion filed Sept. 30, 1997). That motion dismissed claims of representatives on behalf of a putative subclass of approximately eight million vehicle owners whose cars and light trucks had been recalled by Ford in April of 1996 for replacement of the ignition switch, but who had experienced no damage or loss. Of the 119 named plaintiffs in the consolidated complaint, the claims of 44 were dismissed on this ground. (Opinion filed Sept. 30, 1997 at 18–21.) In the course of deciding the motion to dismiss the consolidated amended complaint, the court dismissed the Magnuson–Moss Warranty Act claim because the remaining named plaintiffs were of insufficient number to meet that Act's pleading requirements. The MDL plaintiffs assert that the dismissal of the federal claims under the Magnuson–Moss Warranty Act deprives this court of federal question jurisdiction and requires transfer of the constituent MDL cases to their districts of origin and remand to the state courts of those cases originating in the state courts.

This Opinion addresses two motions filed by plaintiffs in the *Veideman* case—specifically, the motion for a judgment of lack of jurisdiction and the motion for vacatur—as

Civil Action No. 1:96–1024; *Wayne Pierce,* 96–CV–4912 (JBS) from Middle District of Alabama, Civil Action No. 2:96–936; *Robert Cade, et al.,* 96–CV–4407 (JBS) from Eastern District of Louisiana, Civil Action No. 2:96–1541; *Billy Davis et al.,* 96–CV–4172 (JBS) from Southern District of Mississippi, Civil Action No. 2:96–192; *Teddy Obermeister,* 96–CV–4450 (JBS) from Eastern District of New York, Civil Action No. 1:96–2742; *Alvarado et al.,* 97–CV–1905, from the Northern District of Texas, Civil Action No. 1:96–55; *Booker Cook,* 96–CV–5861 (JBS), from the Northern District of Alabama, Civil Action No. 96–2041; *Rick, et al.,* [Not yet allocated a D.N.J. docket number] from Southern District of Illinois, C.A. No. 3:98–511.

**5.** This court permitted the filing of the consolidated complaint in furtherance of the goals of simplifying the issues and streamlining the pleadings in the case. The parties to the consolidated complaint are of course bound by that pleading. The filing of the consolidated complaint did not, however, have the effect of extinguishing the original complaint in the *Veideman, Atkins, Saxe,* and *Davis* cases. With the exception of *Veideman,* the transfer of those original cases to this court by the MDL Panel is what entitles those plaintiffs to file pleadings in this venue.

**6.** The name "the *Veideman* case" shall be hereafter used to refer to this consolidated complaint, for convenience of reference, in order to distinguish this consolidated case from other MDL consumer cases pending before us in which the plaintiffs did not join this consolidated complaint. Thus the term "the *Veideman* case" no longer refers to the case filed by plaintiff *Veideman* in Superior Court of New Jersey and removed to this court, docket number 96–cv–948. Indeed, that case no longer exists, since the claims of the sole named plaintiff, Yvette *Veideman,* were dismissed by this court for failure to state a claim upon which relief may be granted. (*See* Opinion dated Sept. 30, 1997, slip op. at n.10.)

well as a renewed motion filed by the plaintiffs in the *Pierce* case to remand that case to state court.

### B. *Background regarding subject matter jurisdiction in MDL consolidated complaint*

During the pretrial management of these cases, this court raised the issue whether we had subject matter jurisdiction in the complaints alleging no fire-related damage, given that the only basis for federal subject matter jurisdiction that had been alleged was diversity jurisdiction, yet the $75 worth of damages per plaintiff clearly did not satisfy the amount in controversy requirement (which, in this case, was $50,000 per plaintiff) for purposes of diversity jurisdiction under 28 U.S.C. § 1332 [7]. In response to this inquiry by the court, the *Veideman* plaintiffs amended the consolidated complaint to add a cause of action under the Magnuson–Moss Warranty Act—which, *inter alia*, provides that consumer class action suits alleging breach of warranty may be brought in federal district court if the number of named plaintiffs is at least 100, and the damage alleged by each plaintiff is at least $25, and the aggregate amount in controversy is $50,000. *See* 15 U.S.C. § 2301, *et seq.* This Consolidated Amended Complaint also added 133 new plaintiffs, all of whom were from Louisiana.

In an Opinion and Order dated September 30, 1997, this court granted in part and denied in part the defendants' motion to dismiss the claims of the *Veideman* plaintiffs. The claims brought against defendant UTA under the Magnuson–Moss Act were dismissed with prejudice because the underlying express and implied warranty claims against UTA had been dismissed with prejudice. (Slip Op. at 66.) The claims brought against defendant Ford under the Magnuson–Moss Act were dismissed without prejudice. (*Id.*) The court reasoned that in the instant case, in order for plaintiffs to state a claim for relief against Ford under the Magnuson–Moss Act, they must first establish a claim for breach of express warranty, under an applicable state law, which the plaintiffs had not yet done.[8] (*Id.*) The court further reasoned that due to the dismissal of the claims of numerous plaintiffs, there were not 100 named plaintiffs remaining, which is required by the Magnuson–Moss Act for all claims brought as putative class actions. (*Id.* at 66–67.) Thus, the dismissal of the Magnuson–Moss claim rested upon determinations made earlier in the Opinion regarding the validity of the various state law claims of various plaintiffs. The dismissal of the Magnuson–Moss claim was without prejudice to these plaintiffs' right to amend the amended consolidated complaint to cure the defects in failing to state a Magnuson–Moss claim that arose as a result of the dismissal of the Magnuson–Moss claims. (Opinion dated September 30, 1997, Slip Op. at 67.) [9]

Rather than doing so, the *Veideman* plaintiffs instead brought the motion for judgment of lack of jurisdiction, and to vacate this court's rulings on the motions to dismiss and for class certification, and to remand the cases back to their courts of origin for dismissal in the federal district courts and for further proceedings in the state courts.[10]

Oral argument on the *Veideman* plaintiffs' motion to dismiss and to vacate prior rulings was held on June 12, 1998. At the end of the

7. Subsequent to filing those original complaints, the jurisdictional threshold under § 1332 was raised to $75,000 effective Oct. 19, 1996. Pub.L. 104–317.

8. Plaintiffs' claims of breach of express warranty had been dismissed without prejudice and with leave to amend, in the same Opinion.

9. The court did not decide the jurisdictional issue, noting instead, "The parties have not had the opportunity to address whether this court retains subject matter jurisdiction in the face of dismissal of the Magnuson–Moss Act cause of action." (Opinion filed Sept. 30, 1997 at 67.)

10. The instant motions had previously been brought on November 21, 1997. The motions were dismissed without prejudice after a case management conference in which the parties had consented to dismiss and defer the motions in order to proceed with general coordinated discovery in this court. The court's consent order, dated January 28, 1998, noted that "the plaintiffs will probably reinstate these motions when such discovery is completed." Although common discovery had not yet been completed—indeed had apparently barely begun—the motions were renewed by plaintiffs on May 7, 1998.

hearing, the court indicated that a written opinion was to follow, and that the *Veideman* plaintiffs' motion to vacate the court's prior decisions would be denied with prejudice, while the *Veideman* plaintiffs' motion for a judgment of lack of jurisdiction would be denied without prejudice. (Tr. 6/12/98 at 71.) The court found that it should continue to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the claims arising at state law, pending conclusion of coordinated general discovery in all related cases presently before this court.

The court at that time set forth its plan for future management of the case, which included the following elements: (a) the temporary preclusion of dispositive motions; (b) mandating conclusion of all common discovery within approximately the next 100 days; (c) conducting periodic case management conferences at least every fourteen days; (d) requiring coordination of the *Veideman* discovery with that of the *Snodgrass* and *State Farm* Cases; and (e) to revisit the appropriateness of continued exercise of supplemental jurisdiction at the conclusion of the 100 day discovery period. (Tr. at 72.) [11]

## DISCUSSION

I. *Motion for a Judgment of Lack of Jurisdiction*

A. *Veideman plaintiffs' Motion for Judgment of Lack of Jurisdiction and to Vacate prior decisions*

The *Veideman* plaintiffs argue that now that the Magnuson–Moss Act claims have been dismissed, there is no basis at all for federal jurisdiction, and the *Veideman* case must be remanded to state court.[12] In addition, plaintiffs make the unsupportable assertion that this court never had subject matter jurisdiction over these cases, and that this court's prior decisions (specifically the denial of plaintiffs' motion for class certification and

the granting in part of defendants' motion to dismiss) must be vacated. As explained below, plaintiffs fail on both arguments.

1. *Motion to Vacate*

■ It is certainly the case that this court no longer has federal question jurisdiction over any of the *Veideman* plaintiffs' remaining claims, in light of the dismissal of the Magnuson–Moss Act claims and plaintiffs' decision not to amend their consolidated complaint to cure the Magnuson–Moss pleading defects. It is also true that diversity jurisdiction over these plaintiffs' state law claims is now lacking because the amount in controversy requirement of 28 U.S.C. § 1332 has not been satisfied. Contrary to plaintiffs' assertions, however, the absence of original jurisdiction at this time does not mean that this court never had subject matter jurisdiction over this case.

This court has always had jurisdiction over this case. When the case initially came before us, we had jurisdiction over it because the plaintiffs and defendants both asserted that we had original jurisdiction under 28 U.S.C. § 1332 and no determination had yet been made that such jurisdiction was lacking. After plaintiffs amended their complaint, this court continued to have subject matter jurisdiction over the case under 28 U.S.C. § 1331, because plaintiffs had brought a claim "arising under" a federal statute, the Magnuson–Moss Act. *See Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, ——, 118 S.Ct. 1003, 1011, 140 L.Ed.2d 210 (1998) (stating that it is "established jurisprudence that the failure of a cause of action does not automatically produce a failure of jurisdiction" and quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) for the proposition that " 'jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover' ").

---

**11.** After receiving and considering all parties' views, the court entered Scheduling Order No. 9 on July 8, 1998, to guide this coordination of all MDL cases (including the insurance cases) and the *Snodgrass* cases, and to enable the common fact discovery to go forward to completion by October 15, 1998. Meanwhile, the joint case management conferences have been convened on June 12, June 26, July 10, July 24, August 13, and August 29, 1998.

**12.** Movants make no mention of how the MDL consumer cases that were originally filed in federal court (*see infra* n.1) would be affected were they to prevail in the instant motion.

Upon the dismissal of the Magnuson–Moss claims, this court continued to have subject matter jurisdiction under 28 U.S.C. § 1367, because we had not yet "decline[d] to exercise supplemental jurisdiction" under 28 U.S.C. § 1367(c). That this court has throughout also had supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367 is, furthermore, reflected in the plain language of § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts *shall* have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" (emphasis added). Thus this court has always had subject matter jurisdiction over all the claims in this case, initially through original jurisdiction, and later through supplemental jurisdiction, which continues to the present time. Accordingly, plaintiffs' motion to vacate our prior decisions will be denied with prejudice.

### 2. *Motion For a Judgment of Lack of Subject Matter Jurisdiction*

We now turn to the question whether to continue asserting supplemental jurisdiction over the remaining claims in the *Veideman* cases, pursuant to 28 U.S.C. § 1367, or whether to instead transfer these cases back to the MDL Panel.

■ Defendants argue that this court should continue to exercise discretionary supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.[13] Contrary to plaintiffs' assertions, the question whether to exercise supplemental jurisdiction over the remaining state law claims is an entirely discretionary decision. *See*

*City of Chicago v. International College of Surgeons*, 522 U.S. 156, ——, 118 S.Ct. 523, 533, 139 L.Ed.2d 525 (1997)(interpreting the supplemental jurisdiction statute to be "discretionary in nature," and the doctrine of pendent jurisdiction to be " 'a doctrine of flexibility' ")(quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). That this court could, if it wished, continue to exercise supplemental jurisdiction, is evidenced by the very wording of Section 1367(c), which states that "[t]he district courts *may decline* to exercise supplemental jurisdiction," which language implies that the court has jurisdiction over the state law claims unless and until it declines to exercise that jurisdiction. (Emphasis added.)

■ In determining whether to continue exercising supplemental jurisdiction, a number of factors should be considered by the district court. *See International College of Surgeons*, 118 S.Ct. at 534. These factors include, *inter alia*, "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *Id.* The various relevant factors should then be weighed in light of " 'the values of judicial economy, convenience, fairness, and comity.' " *Id.* (quoting *Cohill*, 484 U.S. at 350, 108 S.Ct. 614). This evaluation should be repeated "at every stage of the litigation." *Id.*

■ At the present stage in the instant litigation, this evaluation comes out in favor of maintaining supplemental jurisdiction. It is unquestionably the case that the values of economy, convenience, and fairness all weigh in favor of the exercise of supplemental jurisdiction. Indeed, it is noteworthy that these

---

**13.** Section 1367 states, in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

very same factors were weighed by the MDL Panel in determining whether to transfer these cases to this court for consolidated pretrial proceedings. *See* 28 U.S.C. § 1407 (providing that civil actions involving common questions of fact may be transferred for coordinated or consolidated pretrial proceedings upon the panel's determination that the transfer will be for "the *convenience* of the parties and witnesses and will promote the *just* and *efficient* conduct of [the] actions")(emphasis added). Since the MDL Panel made that determination, circumstances have not changed in any way that would alter this analysis.[14]

It is a tautology that it is more economical and convenient for the parties to conduct pretrial proceedings before one court, in which discovery can be coordinated, and issues common to each case can be resolved in a consolidated fashion. Indeed, plaintiffs have conceded as much at oral argument. (Tr. June 12, 1998 Tr. at 30:16–18.)

Furthermore, the case management plan outlined *supra,* which calls for a three-to-four month period of intensive coordinated discovery activity, under close supervision of the court, and without the distraction of dispositive motion practice, will hopefully serve to maximize the efficiency and convenience which can be gained by retention of these cases by this court. At the end of that period, the court will revisit the question whether there is any further benefit to be gained by the ongoing retention of these MDL consumer cases by this court.[15]

The third factor to be considered is the fairness of maintaining supplemental jurisdiction at this time. There is, so far as the court can see, no reason to believe that the retention of supplemental jurisdiction at this stage would be unfair. The plaintiffs are clearly before this federal district court by their own choice, since they responded to the court's jurisdiction-related concerns by voluntarily filing an amended consolidated complaint in which they alleged the existence of both diversity jurisdiction and federal question jurisdiction. It would, on the other hand, be quite unfair to defendants to scatter these cases back to their courts of origin prior to the completion of general common discovery, where the current indications show that defendants are being responsive to all plaintiffs' reasonable discovery needs in this forum. Moreover, much of this coordinated discovery has taken place not in New Jersey, but in the various places around the country where named plaintiffs have been deposed and where their available vehicles have been inspected, together with the places in Michigan and Washington, D.C., where defendants' employees and documents are located. That the cases are centered in New Jersey has caused no hardship.

Finally, the concern of comity does not, in this case, weigh in favor of relinquishing supplemental subject matter jurisdiction over these cases. Although the consolidated MDL plaintiffs are now asserting only state law causes of action,[16] the consolidated complaint, and the underlying individual complaints are all putative nationwide class ac-

---

**14.** Indeed, the only thing which has changed is that this court's decisions on two motions—the motion for class certification and the motion to dismiss—were unfavorable to plaintiffs. As reflected in plaintiffs' motion to vacate those decisions, plaintiffs—having received unfavorable decisions—would like to wipe the slate clean and try their luck again before a variety of different courts. Though this desire may be understandable, it is not in any way relevant to the analysis at hand.

**15.** Similarly, while diversity jurisdiction's amount in controversy is satisfied in the MDL Insurance plaintiffs' subrogation cases under 28 U.S.C. § 1332, this court will examine, at the close of coordinated common discovery, whether to recommend that the MDL Panel transfer those cases back to their districts of origin for further proceedings.

**16.** The consolidated MDL plaintiffs had the opportunity to cure the jurisdictional defect by identifying a sufficient group of individual plaintiffs to meet the Magnuson–Moss criteria. In the opinion and order dated September 30, 1997, this court, *inter alia,* dismissed without prejudice plaintiff's Magnuson Moss Warranty Act claims, and expressly provided that failure to amend the complaint to cure the defects in these claims within 30 days would result in the automatic dismissal with prejudice of those claims. Plaintiffs did not amend their complaint within the provided 30 day period—nor did they seek leave of court to modify the 30 day deadline. Accordingly, plaintiffs are now permanently foreclosed from bringing claims under the Magnuson Moss Warranty Act.

tions. Thus the law of up to fifty states—rather than of one particular state—is at issue in these cases. No single state court could have a superior claim to apply the law of fifty states to these putative nationwide class actions. Under these circumstances, it would not be in any way a courtesy to any state court to remand these cases at this time. For all these reasons, therefore, this court holds that the balance weighs unequivocally in favor of retaining supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a), and that dismissal of these claims is not presently warranted under 28 U.S.C. § 1367(c)(3), *supra*. Plaintiffs' motion for a judgment of lack of jurisdiction shall be denied.

## B. *Pierce Plaintiffs' Renewed Motion to Remand*

■ One sub-group of MDL consumer plaintiffs who are not party to the consolidated MDL consumer (*"Veideman"*) complaint is the *Pierce* plaintiffs. Those plaintiffs had filed their complaint in the Circuit Court of Autauga County, Alabama. The case was removed by defendants to the United States District Court for the Middle District of Alabama on June 5, 1996. In the original removal notice, defendants asserted the existence of federal subject matter jurisdiction under 28 U.S.C. § 1332, diversity jurisdiction. Defendant Ford Motor Company subsequently submitted an "amended notice of removal" two days later, on June 7, 1996. In that submission, Ford's attorneys explained that at the time the original removal notice had been filed, Ford's attorneys had been unaware of the existence of an amended complaint, which plaintiffs had filed and served on Ford on May 29, 1996, but which Ford's attorneys had not yet seen. The amended complaint had added a Michigan resident, Christopher Barker, as a named plaintiff, thereby destroying diversity of citizenship for purposes of federal diversity jurisdiction, since defendant Ford's principal place of business is in Michigan. In the amended removal notice, defendant Ford argued that despite the lack of complete diversity of citizenship, the district court should exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the claims of plaintiff Barker.

On June 13, 1996, the *Pierce* plaintiffs filed a motion for remand in the Middle District of Alabama. That motion was fully briefed while the case was pending in the Middle District of Alabama, prior to the MDL hearing on motions to transfer. Upon transfer of the case to this court by the MDL Panel, this court refrained from ruling upon the pending motion to remand, under the rationale that the consolidated *Veideman* plaintiffs' motion for class certification should first be decided, since the *Pierce* plaintiffs could themselves be class members if a nationwide class were certified in this case. On November 10, 1997, after the motion for class certification was denied, the *Pierce* plaintiffs filed this "renewed motion for remand". The *Pierce* plaintiffs withdrew this motion in January, 1998, and have now asked that it be reinstated. In this motion, the *Pierce* plaintiffs rely largely upon the papers previously filed in the Middle District of Alabama.

The grounds for remand asserted by the plaintiffs are as follows: (a) there is no basis for federal jurisdiction, as no federal question is asserted and the parties are not diverse and the jurisdictional amount is not satisfied, and (b) that the removal was untimely and (c) the amended removal notice was defective because defendant UTA was not a party to it. We need not reach the issues of timeliness or defectiveness of the removal notice, as we find that there is no basis for federal subject matter jurisdiction alleged in the removal notice, nor present in the complaint.

The sole basis for federal jurisdiction asserted by the removing defendant is diversity jurisdiction under 28 U.S.C. § 1332. This statute requires that the parties be in complete diversity—that is, that none of the plaintiff parties have a state of citizenship in common with any defendant party. This threshold requirement is not met in the instant case, because plaintiff Christopher Barker is a Michigan citizen, as is defendant Ford, since Ford's principal place of business is in Michigan. Ford asserts that this lack of complete diversity of citizenship is not fatal to Section 1332 jurisdiction because the defect in diversity of citizenship can be cured through use of the supplemental jurisdiction statute, 28 U.S.C. § 1367. On this point, however, Ford is mistaken.

In order for "supplemental" jurisdiction to attach, the court must already have (or have had) jurisdiction of another closely related claim. *See* 28 U.S.C. § 1367 ("in any civil action *of which the district courts have original jurisdiction,* the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action *within such original jurisdiction* that they form part of the same case or controversy under Article· III")(emphasis added). Ford has not presented, and the court is not aware of, any precedent for the proposition that the supplemental jurisdiction statute can be used as an independent basis for asserting federal jurisdiction over an entire case.[17]

Accordingly, there is no basis for subject matter jurisdiction over the *Pierce* case, and the case must therefore be transferred back to the MDL Panel with a recommendation (pursuant to Rule 14(c)(ii) of the Rules of Procedure of the Judicial Panel on Multi–District Litigation) that the case be returned to the United States District Court for the Middle District of Alabama, Docket No. 2:96–936, for that court's remand to the Circuit Court of Autauga County, Alabama.[18]

### CONCLUSION

For all the reasons stated, the *Veideman* plaintiffs' motion for a judgment that this court lacks subject matter jurisdiction shall be denied without prejudice, while the motion to vacate this court's decisions regarding class certification and motion to dismiss shall be denied with prejudice. In addition, the *Pierce* plaintiffs' motion to remand shall be granted, and the *Pierce* case shall be transferred to the MDL Panel with a recommendation (pursuant to Rule 14(c)(ii) of the Rules of Procedure of the Judicial Panel on Multi–District Litigation) that the case be returned to the United States District Court for the Middle District of Alabama, Docket No. 2:96–936, for that court's remand to the Circuit Court of Autauga County, Alabama. Circuit Court of Autauga County, Alabama. An appropriate order shall be entered.

### ORDER

This matter having come before the court upon the *Pierce* plaintiffs' renewed motion to remand the *Pierce* case to state court [docket item no. 107]; and upon the *Veideman* plaintiffs' renewed motion to remand actions and to vacate ruling on motions to dismiss and for class certification [docket item no. 107]; and the court having reviewed the parties' submissions and supplemental submissions; and the court having heard oral argument on the *Veideman* plaintiffs' motion; and for the reasons stated in the opinion of today's date;

IT IS, this 27th day of August, 1998, hereby ORDERED that the *Pierce* plaintiffs' motion to remand be GRANTED, and that the *Pierce* case, 96–cv–4912 (which was transferred to this court on October 10, 1996 by the Judicial Panel for Multi–District Litigation (the "MDL Panel")), be transferred to the MDL Panel with the recommendation (pursuant to Rule 14(c)(ii) of the Rules of Procedure of the Judicial Panel on Multi–

---

**17.** The cases cited by Ford in Ford's removal notice are inapplicable to the instant case, as they involve the attempted joinder of an in-state defendant car dealership in order to destroy diversity for a nationwide class of persons, the great majority of whom had no claims against the in-state defendant, because they had not purchased a car from that defendant. *See Arnold v. Ford Motor Co.,* Slip op., No. 95–0073–M, May 2, 1995; *Seale v. Nissan Motor Acceptance Corp.,* Slip Op., No. 95–1008–BH–M, 1996 WL 539899, March 7, 1996. Those courts deemed the joinder of the in-state car dealer as fraudulent, due to the lack of claims by most plaintiffs against that defendant, and separated the plaintiffs into two sub-groups—those who had a claim against the in-state car dealership, and those who did not. The courts then found diversity jurisdiction to be present with regard to those with no claim against the in-state dealer, and then asserted supplemental jurisdiction over the claims of the plaintiffs who had a claim against the in-state car dealer. The facts in those two cases are in every respect distinct from and irrelevant to the case at hand, since the case at hand involves the joinder of a plaintiff—not a defendant—who has stated a viable claim against both defendants Ford Motor Co. and UTA. Because of the existence of this non-diverse plaintiff, there is no basis for original jurisdiction in this case, and thus there is no basis for the assertion of supplemental jurisdiction.

**18.** Having determined that we have no subject matter jurisdiction over the *Pierce* litigation, we may not reach the merits of the other motion pending in that case, which is defendant UTA's motion to dismiss the *Pierce* complaint for lack of personal jurisdiction over UTA. Accordingly, that motion shall be dismissed without prejudice.

District Litigation) that the case be returned to the U.S. District Court for the Middle District of Alabama, Docket No. 2:96–936, with the instruction that it be remanded to the Circuit Court of Autauga County, Alabama; and

IT IS FURTHER ORDERED that the remaining motion pending in the *Pierce* case (that is, defendant UTA's motion to dismiss for lack of personal jurisdiction [docket item 107]) be DISMISSED WITHOUT PREJUDICE; and

IT IS FURTHER ORDERED that the *Veideman* plaintiffs' motion to remand actions and to vacate ruling on motions to dismiss and for class certification is DENIED, and that the denial as to the motion to vacate rulings is WITH PREJUDICE, whereas the denial as to the motion to remand actions is WITHOUT PREJUDICE; and

IT IS FURTHER ORDERED that this court has supplemental jurisdiction, pursuant to U.S.C. § 1367(a), over all claims remaining in the Amended Consolidated Complaint of the MDL consumer plaintiffs *Veideman, et al.*, 96–cv–948 & 96–cv–3125.